UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MARY C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00240-SEB-MPB |
| | ) |
| ANDREW M. SAUL, | ) |
| | ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 9). Plaintiff Mary C.[1] seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The matter is fully briefed. (Docket No. 12, Docket No. 16, Docket No. 17). It is recommended that the District Judge **REMAND** the decision of the Deputy Commissioner of the Social Security Administration finding that Plaintiff Mary C. is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I. PROCEDURAL BACKGROUND

On October 23, 2014, Mary C. filed an application for Title II Social Security Disability Insurance ("SSDI") benefits and Title XVI Supplemental Security Income ("SSI") on October 23, 2014). (Docket No. 7-1 at ECF pp. 20, 28). The applications alleged an onset date of November 16, 2010. (Docket No. 7-3 at ECF p. 54). The Disability Determination Bureau ("DDB") denied Plaintiff's claims on January 21, 2015. (Docket No. 7-2 at ECF pp. 14, 18). Plaintiff filed a request for reconsideration on March 26, 2015, but was denied on May 12, 2015. (Docket No. 7-2 at ECF pp. 27, 34). Plaintiff then filed a request for administrative hearing on June 10, 2015. (Docket No. 7-2 at ECF p. 41).

Plaintiff appeared for a hearing in Indianapolis, Indiana before Hon. Administrative Law Judge Jody Odell of the Indianapolis, Indiana, Office of Disability Adjudication and Review ("ODAR") on January 24, 2017, and again on February 14, 2019. (Docket No. 7-1 at ECF p. 33). The ALJ issued an unfavorable decision on April 5, 2019, concluding that the claimant's impairments permitted the performance of work. (Docket No. 7-1 at ECF p. 26). Mary C. then timely filed a complaint with this court, asking the court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits. (Docket No. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

## II. STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found

disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments in the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. §

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI"), which are identical in most respects. *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(i). The court will take care to detail any substantive differences that are applicable to the case but will not always reference the parallel section.

3

404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. FACTUAL BACKGROUND

When Mary C. filed, she alleged she could no longer work because of depression, anxiety disorder, fibromyalgia, arthritis, psoriatic arthritis, PTSD, anxiety disorder, panic attack disorder, irritable bowel syndrome and narcotic bowel, migraines, cognitive and memory issues, and hypo-vitaminosis C, D & B12.[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a) and ultimately concluded that Mary C. was not disabled. (Docket No. 7-1 at ECF p. 11). At step one, the ALJ found that Mary C. had not engaged in substantial gainful activity[4] since the alleged onset date of November 16, 2010. (Docket No. 7-1 at ECF p. 17). At step two, the ALJ found that Mary C. had the following severe impairments: fibromyalgia, osteoarthritis, psoriatic arthritis, sicca syndrome, migraine headaches, depression, and anxiety. (*Id.*). At the first half step of step three, the ALJ determined that the claimant did not have any impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (*Id.*). At the second half step of step three, the ALJ found the claimant retained the residual functional capacity to perform sedentary work with the following exceptions:

> [T]he claimant can lift, carry, push and pull ten pounds occasionally and less than ten pounds frequently. The claimant can stand and walk two hours of an eight-hour workday and sit for six hours of an eight-hour workday. The claimant must have an option to alternate between sitting and standing every thirty minutes as well as the

---

[3] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

>option to stand/stretch for one to two minutes every thirty minutes. The claimant can occasionally climb ramps and stairs but never ladders, ropes or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must never be required to operate a motor vehicle or work around unprotected heights and moving mechanical parts. The claimant must never be required to work around slippery, uneven surfaces. The claimant can work in an environment with a noise intensity level of 3 or less, based on the noise intensity level chart set forth by the Dictionary of Occupational Titles (i.e., 1 very quiet, 2 quiet, 3 moderate). The claimant can attend, concentrate and persist for two hours at a time, up to eight hours in a workday. The claimant can tolerate occasional interaction with supervisors and co-workers but never with the general public.

(Docket No. 7-1 at ECF p. 20).

At step four, the ALJ concluded that the claimant was unable to perform any past relevant work. (*Id.* at ECF p. 24). At step five, the ALJ concluded that there are a significant number of jobs existing in the national economy that the claimant has the residual functional capacity to perform. (*Id.* at ECF p. 25). Upon the step five conclusion, the ALJ found the claimant was not disabled. (*Id.* at ECF p. 26).

## IV. DISCUSSION

Mary C. raises two assignments of error: (1) that the ALJ failed to meaningfully evaluate social and concentration-related limitations assessed by the state agency physicians and the consultative examiner, which resulted in a mental residual functional capacity and step five conclusion that lacked the requisite logical and accurate bridge to the evidence in the record and (2) that the ALJ's residual functional capacity did not account for her debilitating migraine headaches.

6

1. **ALJ's treatment of social and concentration-related medical evidence and the resulting mental residual functional capacity**

Mary C. argues that the ALJ erred when she failed to provide a logical explanation for her dismissal of the state agency psychologists' potentially disabling opinion of moderate "check-box" limitations to a number of social and concentration-related limitations. (Docket No. 7-1 at ECF pp. 126–7; Docket No. 7-1 at ECF pp. 159–60). Mary C. argues that these errors were compounded because she did not present these limitations to the vocational expert, whom Mary C. argues would have been likely to testify a lack of employer tolerance for these psychologically induced limitations. These errors, Mary C. concludes, result in a step five denial of disability benefits that lacks the requisite "logical and accurate" bridge from those aforementioned conclusions to highly probative evidence contained within the record.

The Commissioner responds that the ALJ evaluated Mary C.'s mental impairments under the new mental impairment regulations, which became effective in January 2017. She further argues that these state agency records do not support greater limitations than those already assessed by the ALJ. The Commissioner argues that the ALJ explained why she generally accepted the opinions of Drs. Lovko, Larsen, and Yee, but found no greater limitations in social interaction or concentration than she included in Plaintiff's RFC.

Mary C. replies that the Commissioner overlooks that the ALJ failed to even discuss the agency-contracted psychologists' ratings of moderate limitations in a number of social and concentration-related areas. Instead, Mary C., argues that the Commissioner focuses on the ALJ's discussion of the consultative examiner's opinion, which is a red herring argument.

The ALJ must explicitly account for all of claimant's limitations in her residual functional capacity assessment and her hypothetical to the vocational expert, unless the VE has independently reviewed the medical record. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir.

7

2018); *Lanigan v. Berryhill*, 865 F.3d 558, 563, 565 (7th Cir. 2017). Here, Drs. Lovko and Larsen, the state agency psychologists assigned "moderate" limitations in several of the so-called "check-box limitations" with regard to social and concentration-related impairments, including: "ability to maintain attention and concentration for extended periods," "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods," "ability to accept instructions and respond appropriately to criticism from supervisors," "ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (Docket No. 7-1 at ECF pp. 126–7, 159–60).

In the narrative, additional explanation, the psychologists opine:

> To the extent his/her physical condition permits, the evidence suggests the claimant can understand, remember, and carry-out unskilled to semi-skilled tasks. The claimant can relate on a superficial basis on an ongoing basis with co-workers and supervisors. The claimant can attend to task for sufficient periods of time to complete tasks. The claimant can manage the stresses involved with work.

(*Id.*).

The ALJ assigned partial weight to Drs. Lovko and Larsen's opinions and noted that they:

> generally opined that the claimant has no significant limitation in her capacity to understand and remember simple instructions, sustain attention and concentration for simple instructions, maintain appropriate social interaction in the workplace and adjust to workplace change. The consultants' opinions regarding the claimant's capacity for detailed instructions are inconsistent with evidence documenting her normal thought processes and executive function (Exhibit 16F).

I agree that this case is analogous to the Seventh Circuit's recent decision in *DeCamp v. Berryhill*, a case in which the ALJ omitted any discussion or confrontation of the state-agency

8

psychologist's so-called "check-box limitations" with regard to concentration-related impairments in both his decision and in presenting hypothetical questions to the vocational expert. 916 F.3d 671, 676 (7th Cir. 2019). Here, the state agency reviewing psychologists assessed opinions of limitations that were more restrictive than the ALJ's characterization of the same.

With regard to social interaction, while the residual functional capacity adopted by the ALJ provides a quantitative limitation with regard to Plaintiff's exposure to coworkers and supervisors, it did not touch upon the quality of and employer tolerance for the "inappropriate" and "distracting" interactions with co-workers and supervisors that the state agency psychologists opined Mary C. would exhibit at some point during the workday or workweek. (Docket No. 7-1 at ECF pp. 160–1). With regard to the ALJ's findings of moderate limitations of concentration, persistence, or pace, specifically, the Seventh Circuit has held that "among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). Here, the ALJ failed to consider the more restrictive "checkbox limitations" assessed by the state agency psychologists that are associated with concentration, persistence, or pace. The ALJ's RFC and hypothetical to the VE concluded Mary C. could "attend, concentrate and persist for two-hour periods at a time, up to eight hours in a workday." (Docket No. 7-1 at ECF p. 20; Docket No. 7-1 at ECF p. 69). Yet, the ALJ's discussion does not address the state agency psychologists' moderate ratings in ability to "maintain attention and concentration for extended periods" and "the ability to complete a normal workday and workweek without interruption from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Docket No. 7-1 at ECF p. 159). "[E]ven if an ALJ may rely on a narrative explanation, the ALJ

9

still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms." *DeCamp*, 916 F.3d at 676.

The Commissioner's briefing offers a discussion with regard to each item of evidence the ALJ considered in constructing her ultimate residual functional capacity. The Commissioner argues that Mary C. has failed to explain how these records establish greater limitations than those assessed by the ALJ. Yet, in citing these records the Commissioner does not reference the ALJ's omission: the agency-contracted psychologists' suggestive of moderate limitations in the areas just discussed. The Commissioner's discussion of the ALJ's criticism of Dr. Yee's, the consultative examiner, opinion is largely unhelpful to address Mary C.'s criticism of the ALJ's treatment of the state agency psychologists' opinions, which the ALJ was required to confront.

The Commissioner offers no argument that distinguishes this case from *DeCamp*, 916 F.3d at 767. The ALJ was required to consider and confront opinions of Drs. Lovko and Larsen who opined Mary C. had social and concentration, persistence, or pace limitations that were more limiting than what she was ultimately assessed. The court is further unpersuaded by the argument that all of Mary C.'s case law with regards to concentration, persistence, or pace is outdated given this case law preceded a regulation change that now defines a "moderate" rating. There is no indication that the well-established line of cases cited by Mary C. are so narrowly focused on the definitions of the degrees of limitations that this line of cases (i.e., *O'Connor-Spinner v. Colvin*, 832 F.3d 690 (7th Cir. 2016); *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015); and *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014), etc.) is now moot. The Commissioner's argument essentially asks this court to conclude that the "moderate" rating essentially equates to no additional limitations, which cannot be true given the regulations also provide for lesser

ratings of "mild" and "no limitations." *See* 20 C.F.R. Part 404, Subpt. P., App. 1 § 12.00(F)(2). The Commission's own comments also contradict this argument. *See* SSA, *Revised Medical Criteria for Evaluating Mental Disorders*, 81 Fed. Reg. 66138, 66147 (Sept. 26, 2016) ("Although we did not provide definitions for most of these terms until now, the definitions in final 12.00F are consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. As a result, the definitions we provide in these rules do not represent a departure from prior policy."). Moreover, the Commissioner's argument that the revised regulations treat concentration, persistence, and pace as disjunctive—while true—does not address the ALJ's error here: that she failed to address opinion evidence indicative of more restrictions than included in the RFC and hypothetical to the VE.

      The cases the Commissioner relies on are distinguishable. In *Burmester v. Berryhill*, the court held that the ALJ's use of boilerplate language limiting the claimant to "simple, routine, repetitive tasks" was acceptable given the fact the state agency reviewing psychologist on whom the ALJ relied explicitly concluded "maintaining concentration and attention should be manageable" 920 F.3d 507, 515 (7th Cir. 2019). There was no such statement here from Drs. Lovko and Larsen who indicated a limitation in Mary C.'s ability to "sustain concentration for extended periods." (Docket No. 7-1 at ECF pp. 126, 159). In fact, the Seventh Circuit distinguished *Burmester* from *DeCamp* noting "[t]here was no other finding in the report that Burmester was unable to concentrate on work, unlike in *DeCamp v. Berryhill*, 916 F.3d 671, 675–6 (7th Cir. 2019)." *Burmester*, 920 F.3d at 511–2. Likewise, the ALJ is *Jozefyk v. Berryhill*, relied upon the narrative opinion of the state agency reviewing psychologists, which explicitly concluded that claimant would have no limitations in sustaining concentration over the course of

11

an eight-hour workday so long as his social limitations were accommodated. 923 F.3d 492, 497 (7th Cir. 2019). Again, here, no such opinion was given by the state agency psychologists for the ALJ to rely upon.

Finally, the Commissioner argues that Mary C. has not attempted to show harm by explaining what additional limitations would have accommodated her symptoms. (Docket No. 16 at ECF p. 22). This argument ignores Mary C.'s detailed discussion of the limitations raised by Drs. Lovko and Larsen. (*See* Docket No. 12 at ECF pp. 20–1, 23). Because I find that the ALJ did not properly evaluate Mary C.'s mental limitations, specifically those in social functioning and in concentration, persistence, and pace, I conclude that remand is necessary.

   2. **ALJ's treatment of migraine headaches in the residual functional capacity assessment**

Second, Mary C. argues that remand is necessary so that the ALJ may either account for some migraine-related time off task or provide a logical and accurate explanation why such a limitation was unnecessary. Mary C. indicates that the ALJ acknowledged "treatment records also document the claimant's history of migraine headaches (Exhibit 28F at 18) for which she takes medication" and that they were a "severe" impairment or an impairment the Social Security Administration defines as any impairment "which significantly limits your physical or mental ability to do basic work activities" (20 C.F.R. § 416.920(a)(4)(ii)), but that the ALJ assessed no resultant unscheduled time off task as part of the RFC, a limitation which the vocational expert testified could be potentially disabling even if it only caused Mary C. to leave a job before a conclusion of a work day more than once per month. (Docket No. 7-1 at ECF p. 17).

The Commissioner responds that Mary C. has not identified objective evidence related to Mary C.'s migraines that the ALJ failed to consider. He further argues that the ALJ reasonably

considered the medical opinion evidence, which did not support greater physical limitations related to migraines.

Mary C. argues that neither the Commissioner nor the ALJ provide any logical and accurate bridge to the conclusion that moderate noise levels would accommodate Mary C.'s migraine which she testified required her to lie down and take medicine nor did the Commissioner touch upon the fact that the record supports the frequency and debilitating nature of migraines lasting up to 24 hours at a time, which required injective treatment.

The ALJ's decision acknowledges Mary C.'s ongoing evaluation and treatment of migraine headaches. (Docket No. 7-1 at ECF p. 22). The ALJ states that "the claimant testified [with regard to migraine headaches] that prescribed medication provides relief. She testified that migraine episodes generally occur several weeks apart. During migraine episodes, the claimant reportedly takes medication and lies down." (Docket No. 7-1 at ECF p. 21). Later, the ALJ indicates that Mary C.'s testimony indicates that her migraine episodes are infrequent and generally not debilitating. (Docket No. 7-1 at ECF p. 22). The ALJ notes that "[n]o treating clinician has noted any deficiency in thought processes secondary to migraines, which suggests that this condition does not significantly impair the claimant's cognitive or mental functional capacities." (*Id.*).

The record demonstrates a long history of treatments for migraines with complaint of migraines lasting up to 24 hours at a time and receipt of injective treatments. (Docket No. 7-4 at ECF p. 92; Docket No. 7-5 at ECF p. 104; Docket No. 7-5 at ECF p. 106; Docket No. 7-6 at ECF p. 88; Docket No. 7-7 at ECF p. 76; Docket No. 7-9 at ECF p. 9). Moreover, upon objective imaging of her cervical spine, Mary C. exhibited etiology commonly associated with migraine headaches: "reversal of the cervical lordosis without evidence of acute fracture or dislocation." (Docket No. 7-5 at ECF p. 62; Docket No. 7-6 at ECF p. 40). It has not been indicated that a doctor

has questioned the validity or credibility of Mary C.'s descriptions and frequency of her headaches, nor is there otherwise evidence to discredit or contradict Mary C.'s headaches.

In concluding that Mary C.'s migraines are "generally not debilitating," the ALJ overlooks the testimony she previously cites that Mary C. must take medication and lay down at least as often as every several weeks. While Mary C. may not have testified she was perpetually experiencing debilitating migraines, she did not testify that she never did. The vocational expert testified that absenteeism in excess of one time per month, which includes leaving work early and showing up half days would preclude employment. (Docket No. 7-1 at ECF p. 70–1).

This is not a scenario where the ALJ fully failed to discuss an impairment's impact on the claimant's residual functional capacity. The undersigned is not convinced remand on this issue, alone, would be warranted. However, given remand is already recommended on the prior issue the undersign recommends that upon remand the ALJ consider whether the record's migraine evidence supports additional residual functional capacity limitations.

## V.  CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal (Docket No. 12) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the February 1, 2021.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.